UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOM COLLINS,

        Petitioner,

                                                  Case No. 16-10584

v.

                                                  HON. AVERN COHN

J. A. TERRIS,

        Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

       This is a pro se habeas corpus case under 28 U.S.C. § 2241. Federal inmate Tom Collins (Petitioner) is challenging a prison disciplinary proceeding that resulted in his return to prison following a period of supervised home confinement. Warden J.A. Terris (Respondent) contends that the petition should be denied because Petitioner failed to exhaust administrative remedies and for lack of merit. For the reasons that follow, the petition will be denied for lack of merit.

### II. Background

       Petitioner was convicted in the United States District Court for the Central District of Illinois of conspiracy to create and possess counterfeit securities. On May 14, 2012, Petitioner was sentenced to 60 months in prison, followed by three years of supervised release.

       On April 22, 2015, federal officials transferred Petitioner to a Salvation Army residential re-entry center (RRC or "the center") in Chicago. On April 23, 2015,

Petitioner signed an agreement to inform staff at the RRC of his whereabouts at all times. On the same day, Petitioner also signed a "community based program agreement" in which he acknowledged that, while a resident of a community corrections center or work release program, he would be required to abide by the rules and regulations promulgated by such program. On June 15, 2015, Petitioner was placed on home confinement.

On June 29, 2015, Petitioner failed to report to a pre-employment class at the Chicago Urban League, and on June 30, 2015, he arrived one hour late for his class at the Urban League. Consequently, a senior case manager filed an incident report, charging Petitioner with a violation of Code 102 (escape without return or return after four hours).

The incident was described as follows:

> At 1025 on 6/30/15, this writer received [a] phone call from SARRC Field Representative, Mr. Robert Vinson, who indicated that he was informed by Mr. Eric Puckett at [the] Chicago Urban League that resident Collins, Tom . . . had failed to report to pre-employment class at the Chicago Urban League . . . on Monday, June 29 and Tuesday, June 30. This writer's review confirmed resident Collins, Tom was scanned out to site at 0838 on 6/29/15, then returned to his Home Confinement site 1545 that same date. Further, he was scanned out at 0846 on 6/30/15, with [an] anticipated return time of 1545. At 1055 on 6/30/15, Program Manager received e-mail from Mr. Puckett at Chicago Urban League, confirming failure of resident to report to Chicago Urban League.

During the subsequent investigation, Petitioner maintained that the incident was "just a misunderstanding."

The incident report was referred to the Center Discipline Committee (CDC) for review and a hearing, see id., and on July 2, 2015, CDC staff member Felicia McClellon conducted a hearing on the charge. Petitioner made the following remarks at the

2

hearing:

> On Monday, 6/29, I called to be signed out but I couldn't get a ride and I didn't have car fare. I didn't go (to the Urban League) but I called when my pass ended. I should have informed staff but I didn't. On Tuesday, 6/30, I arrived at the Urban League at 11:33 am after the spot checker showed up. I was supposed to be there at 10:30 a.m. When I arrived, Mr. Puckett informed me that the spot checker had been there. I got a call from the Center telling me to report in and I came straight here.

The CDC found Petitioner guilty, as charged, of escape. In reaching this decision, the CDC stated:

> The CDC finds you in violation of the charge of Escape based on the email received from Mr. Puckett at the Urban League dated 6/30/15, the report from Field Representative Vinson, as well as your own testimony confirming that you did call on 6/29/15 to be signed out but did not attend class at the Urban League. The fact that you did not have car fare and could not secure transportation does not excuse the fact that you should have contacted your resident advisor or security staff about your lack of transportation. You should have called the Center to be signed back in when you realized you would not be attending class. Instead, you remained signed out for the duration of the pass and your time on Monday, 6/29/15 is unaccounted for 7 hours and 7 minutes placing you in violation of Code 102, Escape.

On August 27, 2015, the discipline hearing officer (DHO) certified the CDC's report and issued sanctions. Petitioner was deprived of forty-one days of good conduct time, and he forfeited forty-nine days of non-vested good conduct time. In addition, Petitioner was denied an early release date for his participation in the Residential Drug Abuse Treatment Program, and his provisional release date of November 23, 2015, was changed to January 15, 2017.

Petitioner appealed the disciplinary action to the North Central Regional Office of the Federal Bureau of Prisons. On November 17, 2015, the regional director denied Petitioner's appeal. Apparently, at approximately the same time, Petitioner was

transferred to the Federal Correctional Institution in Milan, Michigan (FCI-Milan).

On February 9, 2016, Petitioner signed and dated his habeas corpus petition, and on February 17, 2016, the Clerk of the Court filed the petition. Petitioner alleges that he is unlawfully detained and was deprived of his liberty due to a mis-communication with administrators. He maintains that the mis-communication resulted in excessive punishment.

### III.  Analysis

Title 28 U.S.C. § 2241 grants federal district courts jurisdiction over writs of habeas corpus for state prisoners only where they allege they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2241(c)(3). Title 28 U.S.C. § 2241 "is reserved for challenges to the execution of a sentence, such as the computation of parole or sentence credits." Velasco v. Lamanna, 16 F. App'x 311, 314 (6th Cir. 2001). Petitioner's claims are properly brought under § 2241.

### A.  Exhaustion of Administrative Remedies

### 1.  Appeal Process

Respondent first says the petition should be dismissed because Petitioner failed to exhaust administrative remedies for his claims. Federal prisoners ordinarily must exhaust administrative remedies for their claims before filing a § 2241 habeas corpus petition. Luedtke v. Berkebile, 704 F.3d 465, 466 (6th Cir. 2013) (citing Fazzini v. Northeast Ohio Corr. Ctr., 473 F.3d 229, 231-32 (6th Cir. 2006)). Indeed, the Federal Bureau of Prisons has an administrative-remedy program which "allow[s] an inmate to

seek formal review of an issue relating to any aspect of his/her confinement." C.F.R. § 542.10(a). Under the review procedure, appeals from a DHO's decision must "be submitted initially to the Regional Director for the region where the inmate is currently located." C.F.R. § 542.14(d)(2). If the inmate is not satisfied with the Regional Director's response, he or she may submit an appeal to the General Counsel in the Central Office for the Bureau of Prisons. 28 C.F.R. § 542.15(a). Appeals to the General Counsel are the final step in the administrative-remedy program and, ordinarily, they must be submitted within thirty days of the Regional Director's decision. Id.

### 2. Petitioner's Appeal

In this case, Petitioner appealed to the Regional Director of the Bureau of Prisons, but he failed to appeal the Regional Director's decision to the General Counsel before filing his habeas petition. He alleges, however, that he received the Regional Director's response to his complaint after the thirty-day deadline expired for appealing to the General Counsel. He also says that the delay in receiving the Regional Director's response was the result of negligence by prison officials and the fact that he was in transit from a facility in Chicago to FCI-Milan at the time.

### 3. Resolution

The habeas exhaustion requirement is not "statutorily required," Fazzini, 473 F.3d at 235, and, if a petitioner failed to exhaust administrative remedies before filing a § 2241 petition, a District Court may excuse the faulty exhaustion and reach the merits of the petitioner's claims. Ridley v. Smith, 179 F. App'x 109, 111 (3d Cir. 2006). In light of Petitioner's assertions that he was prevented from filing a timely appeal at the final step of the administrative-remedy procedure, the Court will excuse his failure to exhaust

administrative remedies and proceed to the merits of his claims.

## B. Petitioner's Claims

### 1. Sufficiency of the Evidence

Petitioner first says that the disciplinary process was unlawful because sanctions were imposed on him without some evidence that he escaped from custody. He says that he was issued a pass by the RRC to attend classes at the Urban League in Chicago, but after calling the center to sign out for the classes on June 29, 2015, he could not obtain car fare to reach the Urban League. He admits that he waited until after his pass ended to call the RRC and sign back in, but he contends there was no evidence that he left his house. As for June 30, 2015, Petitioner claims that he was merely one hour late in arriving at the Urban League. He argues that the facts did not support an escape charge because he accounted for his whereabouts and he reacted to circumstances beyond his control.

"Some evidence" must support a disciplinary committee's decision to revoke good time credits. However, on review a court is not required to weigh the evidence or to make an independent assessment of the credibility of witnesses. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). Instead, the relevant question is whether there is any evidence in the record to support the disciplinary committee's conclusion. Id. at 455-56.

Petitioner was charged with violating Code 102, which is "[e]scape from escort; escape from any secure or non-secure institution, including community confinement; escape from unescorted community program or activity; escape from outside a secure

institution." 28 C.F.R. § 541.3, Table 1.[1]  It is undisputed that, on June 29, 2015, Petitioner signed out with the RRC for a day of training at the Urban League, but did not go to the Urban League and did not sign back in at his approved residence until after his pass expired.  Although he contends there is no evidence that he left his home confinement, he was unaccountable for over seven hours.  His failure to appear at the Urban League after signing out with the center and his failure to sign back with the center once at his home confinement until after his pass expired constituted an escape from a community program or activity.  Thus, "some evidence" supported the hearing officer's findings.  Petitioner is not entitled to relief on the basis of his challenge to the sufficiency of the evidence.

## 2.  Due Process and Equal Protection

In his second claim, Petitioner next says that the Bureau of Prisons sanctioned him in violation of his rights to due process and equal protection of the law.  More specifically, Petitioner asserts that he was improperly charged with escape, that the evidence was insufficient, and that the incident was just a misunderstanding.

### a.  Due Process

---

[1] The Bureau of Prisons divides prohibited acts into four separate categories based on severity: greatest, high, moderate, and low.  28 C.F.R. § 541.3(a).  Code 102 is considered a "greatest severity level prohibited act."  See 28 C.F.R. § 541.3, Table 1.  In contrast, a Code 200 is a "High Severity Level Prohibited Act."  It reads:

> Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours.

28 C.F.R. § 541.3, Table 1.  Because Petitioner escaped for more than four hours, he was charged with violating Code 102.

The Court has already determined that "some evidence" supported the DHO's decision. Thus, Petitioner was not improperly charged with escape. To the extent Petitioner is challenging the procedures used to find him guilty of the charge, his claim lacks merit for the following reasons.

The Fifth Amendment to the United States Constitution provides in relevant part that "no person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend V. Due process in prison disciplinary proceedings requires: (1) written notice of the charge at least twenty-four hours before the disciplinary hearing; (2) an opportunity to call witnesses and to present documentary evidence at the hearing; and (3) a written statement of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974).

Here, Petitioner was given written notice of the charge at least twenty-four hours before the hearing on the charge. He was also given an opportunity to call witnesses at the hearing, but he waived the right. He has not asserted that he was denied an opportunity to present any documentary evidence. Finally, he was provided a written statement of the evidence relied on and the reasons for the disciplinary action. Based on the record, the due process protections outlined in Wolff were satisfied.

Petitioner nevertheless contends that an uncertified DHO named Felicia McClellon presided over his hearing in violation of 28 C.F.R. § 541.8. Petitioner appears to be relying on an outdated version of the regulation, which

> provide[d] in relevant part that "[e]ach Bureau of Prison institution shall have an independent hearing officer (DHO) assigned to conduct administrative fact-finding hearings covering alleged acts of misconduct and violations of prohibited acts . . . . This person must be trained and certified as a DHO, and meet the other requirements for DHO." 28 C.F. R.

8

§ 541.16(a).

Payne v. Craig, No. 5:08 CV 00989, 2011 WL 4021320, at *2 n.3 (S.D. W. Va. Sept. 9, 2011) (unpublished). "[T]his regulation is no longer effective." Id.

The current regulation, however, requires only that the DHO "be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b). Petitioner has not challenged McClellon's ability to be impartial, and her report indicates that E. Alexander was the DHO who certified the CDC's report and imposed the sanctions against Petitioner. See Resp. to Pet. for Writ of Habeas Corpus, Ex. 8, page 3. Therefore, Petitioner's right to due process was not violated as a result of Ms. McClellon presiding over the disciplinary hearing.

### b. Equal Protection

Petitioner further says that his right to equal protection of the law was violated during the prison disciplinary proceedings. A plaintiff asserting an equal protection claim generally must assert that he or she suffered class-based discrimination. Herron v. Harrison, 203 F.3d 410, 417 (6th Cir. 2000) (citing McCleskey v. Kemp, 481 U.S. 279, 292 (1987), and Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990)). However, the Supreme Court's "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citing Sioux City Bridge Co. v. Dakota Cty., 260 U.S. 441(1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989)).

Petitioner has not identified a protected class to which he belongs, and, even though he asserts that the sanctions imposed on him would not be imposed on another inmate, he has not shown that he was treated differently from a similarly situated inmate. His "[c]onclusory allegations, without evidentiary support, do not provide a basis for habeas relief." Payne v. Smith, 207 F. Supp. 2d 627, 650 (E.D. Mich. 2002). Accordingly, Petitioner's equal protection claim fails.

### 3. The Investigation and Report

In his third claim, Petitioner says that the facts were not properly investigated or reported. He contends that federal officials allowed the disciplinary process to proceed without justification or recommendation for further investigation despite the lack of evidence against him.

When reviewing the charge against Petitioner, the CDC considered information obtained from the Urban League and a field representative. The CDC also relied on Petitioner's admissions at the hearing before the CDC. Petitioner admitted at the hearing that he signed out of his residence on June 29, 2015, but did not attend class at the Urban League. He also admitted that he did not report his absence and that he called in when his pass expired. He conceded that he should have informed staff of his whereabouts, but failed to do so. Response to Pet. for Writ of Habeas Corpus, Doc. 5, Ex. 8, page 2. In light of Petitioner's admissions and the other evidence against him, there was no need for further investigation, and, as noted above, the evidence justified the charge. Habeas relief is not warranted on this ground.

### 4. The Removal from the RRC

In his fourth and final claim, Petitioner says that he was deprived of a liberty interest in violation of his right to due process when federal officials removed him from the RRC and sent him to an administrative-level prison in Chicago.

The Supreme Court has rejected the notion that "any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause." Meachum v. Fano, 427 U.S. 215, 224 (1976) (emphasis in original). This is true even when prison officials transfer a prisoner to an institution with more severe rules. Id. at 223-25. It is also "true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement . . . ." Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). Thus, Petitioner had "no legitimate statutory or constitutional entitlement sufficient to invoke due process" when he was removed from placement in the community. Id.

> [A]lthough prisoners retain a residuum of liberty, see Wolff v. McDonnell, , 418 U.S. 539, 555-556, 94 S.Ct. 2963, 2974-75, 41 L.Ed.2d 935 (1974), a holding that "any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." 427 U.S., at 225, 96 S.Ct., at 2538 (emphasis in original).

Olim v. Wakinekona, 461 U.S. 238, 245 (1983).

In short, Petitioner was not deprived of a protected liberty interest when he was sent back to prison and his right to due process was not violated by the transfer.

### IV.  Conclusion

11

For the reasons given above, Petitioner has failed to show that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Furthermore, the challenged decision was not arbitrary, capricious, or an abuse of discretion under 5 U.S.C. § 706(2)(A).

Accordingly, the petition is DENIED.

SO ORDERED.

S/Avern Cohn<br>
AVERN COHN<br>
UNITED STATES DISTRICT JUDGE

Dated: September 13, 2016
      Detroit, Michigan